Gordon M. McIntyre v. Commissioner.
McIntyre v. Commissioner
Docket No. 62935.
United States Tax Court
T.C. Memo 1958-153; 1958 Tax Ct. Memo LEXIS 73; 17 T.C.M. (CCH) 764; T.C.M. (RIA) 58153; August 13, 1958
*73 John Y. Merrell, Esq., Shoreham Building, Washington, D.C., for the petitioner. Homer F. Benson, Esq., for the respondent. TIETJENS
Memorandum Findings of Fact and Opinion TIETJENS, Judge: The Commissioner determined deficiencies for the year 1951 consisting of the following additions to tax: Internal Revenue Code of 1939
Sec. 294(d)(1)(A)
Sec. 294(d)(2)
$ 2,393.82
$1,595.88
The propriety of the additions to tax is in issue. Findings of Fact Petitioner is a resident of Duck Hill, Mississippi. He filed his individual tax return for 1951 with the collector of internal revenue for the district of Tennessee, Nashville, Tennessee. In this return petitioner reported adjusted gross income of $50,280.72. This was made up of net profit of $72,411.23 from cotton business and a loss of $22,130.51 from farming. On his 1950 return, petitioner reported income of $10,061.20 from cotton business. During and prior to 1951 petitioner engaged in the business of buying cotton for a Memphis, Tennessee company. During the period from July 1950 through at least a part of 1951 petitioner purchased cotton in California under an agreement with F. M. Crump & *74 Company whereby petitioner paid his own expenses and shipped the cotton to Memphis. The Crump Company was to sell the cotton and divide the profits or share losses with petitioner. In the fall of 1951 petitioner formed a partnership with the Crump Company which lasted until July or August of 1952. Petitioner never prepared a tax return of his own. He employed and relied in this respect on the firm of Carl B. Wellborn, auditing service. Wellborn was a certified public accountant and his firm prepared petitioner's returns. Petitioner furnished his books and records to the firm for this purpose and executed whatever returns were prepared for him without question. Petitioner filed a declaration of estimated tax for the years 1944, 1945, and 1946. He did not file such returns for the years 1947 through 1951 because no forms were prepared or submitted to him by the accountants and they did not advise him to file such a declaration. Petitioner's 1950 and 1951 returns were actually prepared by Christopher C. Qualls, an accountant associated with the Wellborn firm. Qualls was not a certified public accountant. He was a public accountant and had been associated with the firm for about *75 10 years. His duties, in part, were to examine the books and records of the Wellborn firm's clients and obtain information necessary to prepare tax returns, prepare such returns and handle examinations with internal revenue agents. Qualls assisted in the preparation of petitioner's 1949 return and from 1950 through 1955 he prepared petitioner's tax returns and handled all tax matters for him. Qualls did not prepare a declaration of estimated tax for 1951, because at that time it was not his policy nor the policy of the Wellborn firm to file estimates for their clients. This policy was based on the firm's belief that the Bureau of Internal Revenue was not imposing penalties for failure to file estimates. So far as the record shows, the Bureau did not advise the Wellborn firm that it was waiving the determination of additions to tax for failure to file estimates. Qualls, on the witness stand, testified his firm and others deliberately "ran the chance" of flouting the law, based on experience in other years, so far as advising clients to file declaration of estimates was concerned. Petitioner's failure to file a declaration of estimated tax in 1951 was not due to reasonable cause. *76 Opinion On the first issue, whether the addition to tax for failure to file a declaration of estimated tax was proper, petitioner seeks to excuse himself by saying, in effect, that he placed himself in the hands of a firm of accountants, the head of which was a certified public accountant with wide experience in tax matters and relied on him for advice, and thus, that the failure to file was due to reasonable cause. Wellborn, the head of the firm in question, did not testify. His associate, Qualls, who was not a certified public accountant, did testify. He was the accountant directly advising on petitioner's tax matters. Of how competent he was to so advise, we have only the record to go by. There is little to establish a basis for petitioner's placing implicit faith in the advice, or lack of advice, given. In previous years petitioner filed the required declarations of estimated tax. For the years 1947 through 1951, however, no such returns were filed, even though in 1950, the year prior to the taxable year, the evidence shows petitioner reported taxable income of upwards of $10,000. Nothing in the record establishes that petitioner ever discussed his tax situation in 1951 *77 with Wellborn. Petitioner testified he supplied all information with respect to his taxes to the Wellborn firm and expected them to advise him regarding the necessary returns and prepare them for him. But when was this information supplied? After the end of the taxable year? He does not prove that he supplied the necessary information in time for his tax advisers to advise whether or not an estimate would have to be filed. Even had he done so, his tax consultant testified that a return of estimated tax would not have been prepared because he believed from experience with other taxpayers that the Bureau was in fact not making additions to tax for such delinquency. Mind, not because of any official statement of policy made by the Bureau of Internal Revenue, but from his own "experience", in handling tax matters in general in his vicinity. Even so, he testified that he knew the revenue laws as early as 1943 required that estimated tax returns be filed, (and such returns were prepared and filed for petitioner in 1944, 1945, and 1946) but because in the later years it was the policy of his firm and of other accountants not to advise the filing of such returns. The following colloquy took *78 place at the trial, with Qualls: "THE COURT: Well, how did you know, or could you know that the Internal Revenue Service was not going to impose any penalty unless you had deliberately advised some clients not to file Returns? You would not have any penalty imposed if they filed returns, of course. Did you deliberately run that chance? You could not have known that they were not going to impose the penalty on the tax unless you deliberately flouted the law? "THE WITNESS: Yes, sir, we ran that chance. Not only my firm but other firms during those years." We think this testimony does not tend to show competence on the part of the taxpayer's advisers. Had the statute been ambiguous or hard to understand so that an honest difference of opinion could arise on the requirement to file a declaration of estimated tax in this case the question might have been different. The record presents no such question and we hold that petitioner's failure to file a declaration of estimated tax for 1951 was not due to reasonable cause. It makes no difference that petitioner could not actually know whether he would suffer a loss before the end of the tax year, or that his business was speculative, or *79 that he was a member of a partnership. ; ; ; ; . Nor is there any evidence to show that this question was ever discussed between taxpayer and Qualls or that taxpayer ever specifically sought the advice on this particular matter. We hold for the Commissioner on the issue of whether the addition to tax for failure to file a declaration of estimated tax for 1951 was proper. , affirming a Memorandum Opinion of this Court. On the second issue, whether the failure to file a declaration of estimated tax results also in a substantial under-estimation of tax within the meaning of section 294(d)(2), we follow , affd. on other issues, (C.A. 10) ; (C.A. 5, July 23, 1958). "Reasonable cause" is not involved on this issue. The Commissioner is sustained. Decision will be entered for the respondent. *80